IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JONATHAN TYLER BECK, § | |
|     Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:16-CV-3244-D-BK |
| § | |
| ALLSTATE VEHICLE AND § | |
| PROPERTY INSURANCE COMPANY, § | |
|     Defendant. § | |

**ORDER**

Pursuant to the District Judge's *Order of Reference*, Doc. 22, and 28 U.S.C. § 636(b)(1)(A), *Plaintiff's Motion to Compel Discovery and Strike Objections and Plaintiff's Request for Attorneys' Fees*, Doc. 21, has been referred to the undersigned for determination. For the reasons stated herein, Plaintiff's motion is **GRANTED IN PART**.

I.   BACKGROUND

Plaintiff initiated this action in state court in October 2016 alleging that, due to a "substandard investigation," Defendant improperly denied and/or underpaid Plaintiff's insurance claim ("the Claim") for storm damage to Plaintiff's house and other property. Doc. 1-1 at 3-4. In January 2017, Defendant served its responses and objections to Plaintiff's discovery request. *See* Doc. 21-2 at 1-15. In August 2017, Plaintiff filed the motion *sub judice*, seeking an order compelling the production of documents responsive to five requests for production ("RFPs") related to Plaintiff's insurance policy, the Claim, the adjusters who adjusted the Claim, and Defendant's claims handling manuals. Doc. 21 at 1-2. As stated in Defendant's response and Plaintiff's reply, the parties have resolved their dispute regarding three of the RFPs and seek the

Court's assistance in resolving the remaining two: RFP Nos. 18 and 19.[1]  Doc. 23 at 1-2; Doc. 25 at 1.

## II.   APPLICABLE LAW

The Federal Rules of Civil Procedure specify the scope of discovery in all civil cases. Unless otherwise limited by the court,

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

A party seeking discovery may move for an order compelling the inspection or production of relevant, non-privileged documents as requested, provided such documents are in the other party's "possession, custody, or control."  FED. R. CIV. P. 37(a); *Spiegelberg Mfg., Inc. v. Hancock*, No. 07-CV-1314-G, 2007 WL 4258246, at *1 (N.D. Tex. Dec. 3, 2007) (Kaplan, J.). This includes documents held by a non-party to the action, provided that the party has the legal right or practical ability to obtain the documents from the non-party.  *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 230 (N.D. Tex. 2016) (Horan, J.).  In making this determination, courts assess whether, given their relationship or affiliation, the party is able to command the non-party to release the requested documents.  *Diamond Consortium, Inc. v.*

---

[1] Defendant also states in its response that it amended its answer to Interrogatory No. 9, however, that relief was not requested by the motion *sub judice*.  Doc. 23 at 2.

*Manookian*, No. 16-CV-94-ALM, 2017 WL 3301527, at *9 (E.D. Tex. Aug. 3, 2017) (citing *Shell Global Sols. (US) Inc. v. RMS Eng'g, Inc.*, No. 09-CV-3778, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011)). The party seeking discovery, however, bears the burden of showing that the other party has control over the documents sought. *Mir*, 319 F.R.D. at 231.

### III.   ANALYSIS

#### A.   Personnel Files

RFP No. 18 seeks the personnel file for anyone Defendant (or an adjusting firm) assigned to participate in evaluating damage to Plaintiff's property, including performance reviews/evaluations, limited to the three years prior to and one year after the Date of Loss. Doc. 21-1 at 18. In his motion, Plaintiff clarifies that he seeks only the resumes and adjustment evaluations/reviews for the adjusters who evaluated the Claim.[2]  Doc. 21 at 5.

Plaintiff argues that this information is relevant to his contention that Defendant unreasonably investigated the Claim. Doc. 21 at 6. Plaintiff also expects that the performance reviews, might include information regarding salary increases "based upon meeting arbitrary claim payment goals" set by Defendant, and reflect the amount the representatives saved Defendant by underpaying claims. Doc. 21 at 6. In response, Defendant contends that the adjuster who assessed the Claim, Dennis Thomasson, is employed by Pilot Catastrophe Services ("Pilot"), and that Defendant does not have access to his employment file. Doc. 23 at 2.

---

[2] In his reply, Plaintiff attempts to further modify his request to seek two additional documents: employment applications and customer service feedback surveys. Doc. 25 at 1-2. However, Plaintiff's failure to request these documents in his original motion prevents him from requesting them for the first time in his reply. *See United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief . . . are waived.").

Additionally, Defendant argues that the request is overbroad, requires the provision of private and personal information, and seeks irrelevant information. Doc. 23 at 2-3. In reply, Plaintiff argues that Defendant's control over the documents is evidenced by the fact that Pilot adjusters are trained by Allstate personnel, wear Allstate uniforms, have access to Allstate's database, review Allstate customer feedback reviews, issue all correspondence on Allstate letterhead, and report to Allstate and Pilot supervisors. Doc. 25 at 2. Plaintiff's position is well-taken.

First, the background, education, and claims-handling training/job performance of the adjusters who assessed the Claim is undoubtedly relevant to a central issue in this case: whether the adjuster who adjusted the Claim improperly assessed the damage to Plaintiff's property. Doc. 1-1 at 3; *Spiegelberg Mfg., Inc.*, 2007 WL 4258246, at *1. Indeed, courts routinely permit discovery of the personnel file of the claims adjuster who adjusted the disputed claim. *See MM United Enter., Inc. v. AGCS Marine Ins. Co.*, No. 12-CV-3744-L, 2013 WL 12126235, at *2 (N.D. Tex. June 18, 2013) (Stickney, J.); *Estate of Haeuser v. Westchester Surplus Lines Ins. Co.*, No. 13-5631, 2015 WL 403632, at *1 (E.D. La. Jan. 29, 2015) (collecting cases).

Second, Plaintiff has shown that Defendant controls, or has the practical ability to obtain, the personnel files. FED. R. CIV. P. 34(a); *Mir*, 319 F.R.D. at 230. Plaintiff asserts – and Defendant does not contest – that Pilot adjusters "[wear] Allstate shirts, write all of their correspondence to Plaintiff on Allstate letter head [sic], and are required to be Allstate certified." Doc. 21 at 4. Additionally, Plaintiff notes that Pilot adjusters are trained by Allstate personnel, have access to Allstate's database and customer reviews, report to Allstate supervisors, and work side-by-side with Allstate's in-house adjusters. Doc. 25 at 2. Defendant and Pilot's integrated relationship demonstrates that, in the context of claims handling, employees and documents flow

4

relatively unencumbered between the two entities.  *See Shell Global*, 2011 WL 3418396, at *2 (noting that in determining whether a party is in control of a non-party, courts should assess, *inter alia*, whether the entities exchange documents in the ordinary course of business or exchange/intermingle employees).  Indeed, there appears to be no practical difference between Allstate employees and Pilot employees adjusting Allstate customers' claims.  Defendant admitted as much in its response to the instant motion, stating that divulging the personnel files would require production of "data pertaining to *Defendant's employees*."  Doc. 23 at 3 (emphasis added).  Thus, Plaintiff has shown that, given the nature of Defendant and Pilot's relationship, Defendant is in control of the personnel files of the adjusters who assessed the Claim.  *Mir*, 319 F.R.D. at 230.

For these reasons, Defendant's contention that it does not have access to Pilot adjusters' personnel files is unavailing.  Doc. 23 at 2.  Similarly, Defendant's conclusory assertions that the request is overbroad/irrelevant and violates adjusters' privacy rights are of no consequence.  *See MM United Enter.*, 2013 WL 12126235, at *2 (finding conclusory assertions were insufficient to demonstrate that a request for an adjuster's personnel file was overbroad and sought irrelevant information); *Barber v. Dolgencorp of Tex., Inc.*, No. 09-CV-60, 2010 WL 1375193, at *2 (E.D. Tex. Mar. 31, 2010) (finding conclusory assertions were insufficient to demonstrate that production of an adjuster's personnel file would violate the adjuster's privacy rights).

Accordingly, Defendant's objections to RFP No. 18 are overruled to the extent it shall produce the documents requested by the instant motion, specifically the resumes and adjustment evaluations/reviews for the adjusters who evaluated the Claim for the three years before and one year after the Date of Loss.

**B. Claims Handling Manuals**

RFP No. 19 asks Defendant to produce its claims handling manual in effect on the Date of Loss "related to [its] claims practices, procedures and standards for property losses and/or wind and hail storm claims, for persons handling claims on [its] behalf." Doc. 21-1 at 18.

Plaintiff argues that these documents are relevant to the question of whether the Claim was handled reasonably, i.e., in accordance with Defendant's policy. Doc. 21 at 4-5. In response, Defendant states that it agreed to produce the Pilot Operational Guide in effect on the Date of Loss. Doc. 23 at 3. Defendant contends, however, that its claims handling manuals are irrelevant because the Pilot employee charged with adjusting the Claim was not provided with, and did not have access to, Defendant's claims handling manuals. Doc. 23 at 3. Additionally, Defendant argues that its claims handling manuals contain irrelevant information concerning the handling of non-storm related claims. Doc. 23 at 3. In reply, Plaintiff asserts, *inter alia*, that Pilot adjusters – as Defendant's agents – would still be required to handle claims in accordance with the policies outlined in Defendant's manuals. Doc. 25 at 4. Additionally, Plaintiff contends that the manuals are relevant as to Defendant's in-house adjusters who also participated in the review of Plaintiff's claim. Doc. 25 at 4.

Defendant's claims handling manuals are relevant, as the adjusters' compliance with Defendant's manuals speaks to the reasonableness of the adjusters' evaluation of the Claim and are relevant to the existence of bad faith. *Spiegelberg Mfg., Inc.*, 2007 WL 4258246, at *1; *see MM United*, 2013 WL 12126235, at *2 (finding that where plaintiff disputed the insurer's denial of its claim, the insurer's claims manuals were relevant to the issue of bad faith and might provide context for how the insurer handled the disputed claim) (citing *State Farm Mut. Auto.*

*Inc. Co. v. Engelke*, 824 S.W.2d 747, 752-53 (Tex. App.—Houston [1st Dist] 1992, orig. proceeding)).

Defendant's argument that the manuals are irrelevant because they were not provided to the adjuster is of no consequence.  Defendant fails to explain – and the Court fails to see – why a third-party adjuster hired on Defendant's behalf to adjust the claim of one of Defendant's customers would not be required to adjust the claim in accordance with Defendant's policies.  Even if Pilot adjusters were not bound by the manuals, Plaintiff avers that Defendant also hired in-house adjusters to "review estimates, determine coverage, and make decision whether to pay, underpay, or deny Plaintiff's claims." Doc. 25 at 4.  Assuming the manuals were not relevant as to Pilot adjusters, they would certainly be relevant as to Defendant's in-house adjusters.  That said, information in the manuals concerning the handling of non-storm-related claims is irrelevant and may be redacted.  Accordingly, Defendant's objections are overruled to the extent it is ordered to produce its claims handling manuals in effect on the Date of Loss, limited to the portions that apply to the handling of storm-related claims.

## IV.    ATTORNEYS' FEES

Plaintiff also seeks an award of its reasonable attorneys' fees for the costs incurred prosecuting its *Motion to Compel*. Doc. 21 at 8.  Federal Rule of Civil Procedure 37(a)(5)(A) provides that if the court grants a motion to compel, it must require the non-movant and/or its attorney to pay the movant its reasonable expenses incurred in prosecuting the motion.  Such an award is not warranted, however, if (1) the movant filed the motion before attempting, in good faith, to obtain the discovery without court intervention; (2) the opposing party's nondisclosure,

objection, or response was justified; or (3) other circumstances make the imposition of sanctions unjust.  FED. R. CIV. P. 37(a)(5)(A).

Plaintiff's counsel argues, and Defendant's counsel does not dispute, that prior to filing the instant motion, Defendant's counsel refused to confer regarding the disputed discovery requests.  Doc. 21 at 2-3; *see* Doc. 23.  This appears to be the case, in light of the fact that Defendant assented to a majority of the disputed discovery requests only after Plaintiff filed the instant motion.  *See* Doc. 23 at 1-2.  While a few of Defendant's objections were justified in part, the large majority were not.  Additionally, Defendant's apparent refusal to meaningfully confer was the overwhelming precipitous of the motion.  Consequently, the Court finds that Plaintiff should be awarded a portion of its reasonable costs and fees.  *See* FED. R. CIV. P. 37(a)(5)(C) (authorizing the Court to apportion reasonable expenses for a motion to compel that is granted in part and denied in part).

Plaintiff's counsel, Mr. David Bergen, avers he expended 10.5 hours prosecuting the instant motion, and, despite his hourly rate of $350.00, only requests fees of $2,500.00.  Doc. 21-4 at 2.  As Defendant does not object to this amount, which apparently reflects a significant downward adjustment, Plaintiff's fee request is **GRANTED**.[3]

---

[3] It has not gone unnoticed that on the same day Mr. Bergen filed the instant motion, August 24, 2017, he filed virtually identical motions to compel in three other cases against Allstate pending in this District related to the alleged underpayment of claims stemming from storm damage to properties, each of which requests fees in the amount of $2,500.00 for 10.5 hours of work.  *See McCullough v. Allstate Fire & Cas. Ins. Co., et al.,* No. 3:17-CV-00051-K (N.D. Tex.), Doc. 30 & Doc. 30-4; *Mason v. Allstate Texas Lloyds*, No. 3:17-CV-00708-D (N.D. Tex.), Doc. 23 & Doc. 23-3; *Coats v. Allstate Fire & Cas. Ins. Co.*, No. 4:17-CV-00087-Y (N.D. Tex.), Doc. 19 & Doc. 20 at 3-4.

## V.   CONCLUSION

For the reasons set forth above, *Plaintiff's Motion to Compel Discovery and Strike Objections and Plaintiff's Request for Attorneys' Fees*, Doc. 21, is **GRANTED IN PART**. Defendant is **ORDERED** to produce documents responsive to RFP Nos. 18 and 19, to the extent stated herein, and reimburse Plaintiff's attorneys' fees in the amount of $2,500.00 **by October 25, 2017**.

**SO ORDERED** on September 25, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE